IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**LAURA ANN DOTY**

    **Plaintiff,**

v.                                        CASE NO. 2:16-cv-11417

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court are Plaintiff's Memorandum in Brief in Support of Motion for Judgment on the Pleadings (ECF No. 10), Defendant's Brief in Support of Defendant's Decision (ECF No.11) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 12).

Background

On April 10, 2013, Claimant applied for disability and disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act. Claimant alleges that her disability began on February 3, 2009. Her applications were denied initially on July 17, 2013, and upon consideration on November 6, 2013. On December 10, 2013, Claimant filed a request for a hearing before an Administrative Law Judge (ALJ). On April 16, 2015, an ALJ presided over a video hearing from Charleston, West Virginia. Claimant appeared in Parkersburg, West Virginia. On May 25, 2015, the ALJ issued a decision denying Claimant's applications (Tr. at 13-26). On July 22, 2015, Claimant requested review by the Appeals Council (AC) of the ALJ's decision (Tr. at 8). On September 30, 2016, the AC denied Claimant's request for review, making the ALJ's decision the final decision of the Commissioner. Claimant filed the

instant action seeking judicial review and requesting remand of the ALJ's decision.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education,

work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant meets the insured status requirements of the Social Security Act through September 30, 2013 (Tr. at 15). The ALJ found that Claimant has not engaged in substantial gainful activity since February 3, 2009. Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of: cervical degenerative disc disease; degenerative joint disease/osteoarthritis of the left hip; obesity; major depressive disorder; anxiety disorder; and substance addiction disorder in early full remission. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 16). The ALJ then found that Claimant has a residual functional capacity to perform sedentary work[1] (Tr. at 19). At the fifth inquiry of the sequential evaluation, the ALJ found that Claimant is unable to perform any past relevant work (Tr. at 24). The ALJ found that Claimant could perform jobs such as inspector, security monitor and bench assembly (Tr. at 25). Therefore, the ALJ denied Claimant's applications.

Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

---

[1] Claimant is able to push, pull and operate foot controls frequently with the left lower extremity. She needs to change positions from sit to stand at will while remaining on task. She is able to climb ramps or stairs occasionally, but never climb ladders, ropes or scaffolds. She is able to balance, stoop, kneel, crouch or crawl occasionally. She should avoid repetitive rotation, flexion, or extension of the neck. The claimant is able to frequently reach, but only occasionally reach overhead, as well as frequently handle and finger bilaterally. She must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, irritants such as fumes, odors, dust, gases and poorly ventilated areas, as well as hazards such as moving machinery and unprotected heights. She is limited to work involving simple, routine, repetitive tasks. The claimant is able to adjust to ordinary changes in the work setting if given time to become familiar. She is limited to occasional, but not prolonged, interaction with co-workers and the public in a non-confrontational setting (Tr. at 19).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

Claimant's Background

Claimant was born on May 4, 1974 (Tr. at 45).  On the date of the hearing, Claimant stood at 5 foot 2 inches and weighed 260 pounds.  (*Id.*)  She lives with her father.  Claimant has a driver's license and drives once or twice a week (Tr. at 46).  Claimant has an Associate's degree in liberal arts.  (*Id.*)

Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as necessary.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the ALJ failed to perform an adequate step three analysis, and thus, the ALJ's decision is not supported by substantial evidence (ECF No. 10).  Claimant argues that the ALJ did not include a discussion of Claimant's medical findings or compare those findings to the listing criteria for disorders of the spine in Listing 1.04A. (*Id.*)   In response, Defendant asserts that substantial evidence supports the ALJ's findings that Claimant's back condition did not satisfy Listing 1.04A (ECF No. 11).  Defendant avers that Claimant has provided insufficient evidence to meet her burden of proof. (*Id.*)

<u>Listing 1.04</u>

Listing 1.04 states the following:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> OR
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

<u>Step Three of Sequential Evaluation</u>

The ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments (Tr. at 25). The ALJ's step three discussion includes the following:

> The claimant's neck impairment is evaluated under Section 1.04 of the Listings. However, the claimant does not have evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required to meet or equal the Listings (Tr. at 16).

<u>Discussion</u>

The ALJ discussed the evidence of record as follows regarding Claimant's severe impairment of cervical degenerative disc disease:

> An impairment or combination of impairments is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities for at least 12 consecutive months. Specifically, a magnetic resonance imaging (MRI) scan of the cervical spine performed on January 26, 2009, revealed central canal stenosis at C6-C7, central canal stenosis and left neural foraminal stenosis at C5-C6, central canal stenosis at C4-C5, and neural foraminal stenosis at C3-C4 (Exhibit 5F) (Tr. at 15-16).
>
> \*\*\*
>
> The evidence of record fails to support the claimant's allegations. The record shows a history of post laminectomy syndrome of the cervical spine, which resulted from a work related injury (Exhibit 5F). A magnetic resonance imaging (MRI) scan of the cervical spine performed on January 26, 2009, revealed only mild central canal stenosis at C6-C7, moderate central canal stenosis and left neural foraminal stenosis at C5-C6, central canal stenosis at C4-C5, and neural foraminal stenosis at C3-C4 (Exhibit 5F). Treatment records show the claimant complained of progressively worsening symptoms over the next several years. On October 29, 2013, she visited rehabilitation specialist Michael Shramowiet, M.D., with complaints of neck pain, which radiated to the shoulders bilaterally, left worse than the right. A MRI of the cervical spine performed on November 22, 2013, evidenced persistent degenerative changes particularly at the C5-C6 level, causing severe central canal stenosis

>(Exhibit 4F). There was severe bilateral neuroforaminal narrowing and a large right paracentral posterolateral disc bulge at C6-C7, causing moderate to severe central canal narrowing. On January 23, 2014, the claimant underwent anterior cervical discectomy and fusion at C5-C6 and C6-C7 (Exhibit 9F).
>
>At a follow-up visit with Dr. Shramowiat on March 25, 2014, the claimant stated the surgery helped her symptoms significantly (Exhibit 8F). She reported only minimal tingling and numbness in the upper extremities. She advised she had not experienced a migraine headache since the surgery. Dr. Shramowiat advised the claimant's rehabilitation potential was good. She continued to report an improvement in her pain when she followed-up with neurosurgeon Charles L. Levy, M.D., on June 6, 2014 (Exhibit 9F). Although she stated she was experiencing tightness and mild pain in the cervical spine with intermittent shooting pains into the bilateral scapulas, lasting for a few seconds, examination revealed full range of motion of the cervical spine. In addition, paraspinal muscle strength was full and paraspinal muscle tone was within normal limits. The claimant did undergo surgery for the alleged impairment, which certainly suggests the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact the record reflects the surgery was generally successful in relieving the symptoms (Tr. at 20).
>
>The claimant's primary healthcare provider noted at a follow-up visit on December 30, 2014, the claimant had normal upper extremity strength (Exhibit 10F). Treatment records from Dr. Shramowiat dated January 8, 2015, showed the claimant had good symptoms decrease with the use of prescribed Norco (Exhibit 12F). Examination evidenced some moderate tenderness and tightness in the cervical paravertebrals and medial upper trapezius bilaterally; however, upper extremity strength was 5/5 on the left and right. Sensation was grossly intact and symmetrical to light touch and deep tendon reflexes were 2+ at the rachioradialis. At a follow-up visit on March 23, 2015, the claimant continued to complain of chronic neck pain (Exhibit 17F). There was no excessive muscle tightness and no tightness or swelling over the greater occipital nerve. Upper extremity strength and deep tendon reflexes remained normal as well. The findings on examination fail to support the claimant's allegations (Tr. at 21).

The ALJ did not discuss how the facts applied to the criteria for Listing 1.04 on disorders of the spine. A reviewing court is unable to know how the ALJ determined whether the criteria

7

was met for that particular listed impairment. The ALJ discussed the medical evidence regarding Claimant's neck impairment, however, the ALJ failed to explain how that medical evidence demonstrated that the criteria of Listing 1.04 was not met, as it relates to the spine.

Defendant asserts that the ALJ correctly found that Claimant failed to demonstrate the required elements of Listing 1.04 under the A, B and C criteria (ECF No. 11). Defendant makes the following *ex post facto* discussion in its Brief in Support of Defendant's Decision:

> Plaintiff contests the ALJ's finding with respect to only Listing 1.04A (Pl.'s Br. at 6-12). Listing 1.04 requires a claimant to show a disorder of the spine resulting in compromise of a nerve root. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. To satisfy paragraph A of Listing 1.04, the claimant must further show:
>
>> Evidence of nerve root compression, characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).
>
> 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A. As explained by the Fourth Circuit, "Listing 1.04A requires a claimant to show . . . that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) (citing 20 C.F.R. §§ 404.1509, 416.909) (ECF No. 11).

The ALJ's step three evaluation in the decision is lacking the information necessary to inform a reviewing court how the medical evidence applies to the criteria necessary to make an impairment considered severe enough to prevent an individual from doing any gainful activity. It is not the role of the Court to search for evidence and articulate for the ALJ's decision which the ALJ himself did not articulate. *See Rhinehardt v. Colvin*, No. 4:12-CV-101-D, 2013 U.S. Dist. LEXIS 75948, 2013 WL 2382303, *2 (E.D.N.C. May 30, 2013) (citation omitted) ("If the ALJ

fails to explain why an impairment does not meet the listing criteria, the decision is deficient."); *Tanner v. Astrue*, C/A No. 2:10-1750-JFA, 2011 U.S. Dist. LEXIS 105731, 2011 WL 4368547, *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the Fourth Circuit stated that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed 2d 643 (1985)).

## Conclusion

Accordingly, the ALJ failed to explain how the medical evidence considered did or did not satisfy the Listing 1.04 criteria. Further, the ALJ's decision is not supported by substantial evidence. As such, the undersigned respectfully recommends that the District Judge grant Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 10) and remand this matter for further consideration and explanation under step 3 of the sequential evaluation. This Court makes no recommendation as to Claimant's remaining arguments as the issues may be addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 10) to the extent Plaintiff seeks remand, **DENY** the Defendant's Brief in Support of Defendant's Decision (ECF No. 11), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of

42 U.S.C. § 405(g) and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Goodwin and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: February 28, 2018

Dwane L. Tinsley
United States Magistrate Judge